BLANK ROME LLP
Jonathan A. Loeb (SBN 162758)
jonathan.loeb@blankrome.com
Erica R. Graves (SBN 301785)
erica.graves@blankrome.com
Nicole N. Wentworth (SBN 334007)
nicole.wentworth@blankrome.com
2029 Century Park East | 6th Floor
Los Angeles, CA 90067
Telephone: 424.239.3400
Facsimile:  424.239.3434

BLANK ROME LLP
Craig M. Flanders (*pro hac vice to be filed*)
craig.flanders@blankrome.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.885.5000
Facsimile:  212.885.5001

Attorneys for Plaintiffs
STEPHEN HENDEL, RUTH HENDEL,
AND KNITTING FACTORY ENTERTAINMENT, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN HENDEL, an individual, RUTH HENDEL, an individual, and KNITTING FACTORY ENTERTAINMENT, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSEPH MORESCO, an individual, LISA ELIN, an individual, and DOES 1 through 5, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. DEFAMATION PER SE IN VIOLATION OF CAL. CIV. CODE §§ 44, 45**<br>**2. FALSE LIGHT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Complaint Filed:   09/28/23 |

---

**COMPLAINT**

Plaintiffs Stephen Hendel, Ruth Hendel, and Knitting Factory Entertainment, Inc. ("KFE") (collectively, "Plaintiffs"), by and through their undersigned counsel, for their Complaint against Defendants Joseph Moresco, Lisa Elin, and Does 1 through 5 (collectively, "Defendants"), hereby allege as follows:

### STATEMENT OF THE CASE

1.    This case concerns an ongoing, coordinated, and malicious campaign by disgruntled business partners—Defendants Moresco and Elin (and their co-conspirators)—to damage an internationally respected businessman and patron of the arts, Stephen Hendel, his wife, Ruth Hendel, and one of his businesses, KFE, by maliciously attacking their professional and personal reputations and falsely accusing them of serious criminal offenses and even mental illness. Plaintiffs seek injunctive relief and money damages, in an amount exceeding $75,000, for the severe harm caused by Defendants' defamatory statements and their malicious and unlawful actions against Mr. Hendel, his wife, and his corporation.

2.    Defendants Moresco and Elin are defendants in a pending litigation in California Superior Court, styled *Morgan Margolis v. Joseph Moresco*, Los Angeles Superior Court Case No. 21-ST-CV-23458 (the "Pappy Litigation"), initiated by Stephen Hendel's wholly owned LLC, arising out of a music venue and restaurant deal that Defendants solicited Stephen Hendel to invest in and ultimately fully fund before Moresco and Elin unilaterally terminated the contract and excluded Hendel from the business. Moresco and Elin, on information and belief (formed from the basis detailed in this complaint), published defamatory and false statements about Mr. Hendel, his wife, and his corporation in order to gain an advantage in the Pappy Litigation.

3.    Specifically, Defendants have intentionally defamed and harmed Plaintiffs by publishing factually false statements regarding their business practices and financial dealings on the website www.stephenhendel.net (the "Website") that

boasts a landing page emblazoned with the title "*Stephen Hendel, a Fela Full of Failure*" and is located on the Internet and accessible to the public at large.

4.    The Website was linked with advanced search engine optimization ("SEO") to drive extensive traffic to the Website, and was published in coordination with a similar smear website about another plaintiff in the Pappy Litigation. That is, a highly motivated party utilized advanced resources to maximize the exposure of the Website.

5.    Defendants have stated on the Website, *inter alia*, that: Mr. Hendel "*money launder[s],*" "*deal[s] in African bloody money,*" and is "*fucking crazy and unstable*"; and Mrs. Hendel is "*making money off of abused, molested, raped and groomed young girls and women.*" At the same time, Defendants assert that KFE is "*a sham company*" "*making ... blood money off the rape, molestation and abuse of children and women*" and "*complicit in abuse, molestation, and multiple humans rights violations.*" Each of the foregoing statements (as well as the statements addressed below) are not opinions but objective false statements of fact that are defamatory, and Defendants knew or should have known that the statements were false and defamatory.

6.    Plaintiffs Stephen Hendel, Ruth Hendel, and KFE now bring this action for defamation *per se* and false light in order to vindicate their rights and reputations and enjoin Defendants to takedown and remove the defamatory Website from the Internet and public access.

## PARTIES

7.    Plaintiff Stephen Hendel is an individual domiciled in the State of New York.

8.    Plaintiff Ruth Hendel is an individual domiciled in the State of New York.

9.    Plaintiff KFE is a corporation incorporated under the laws of the State of Delaware with a principal place of business in the State of Idaho.

10.     Defendant Moresco is an individual domiciled in California who resides in Pioneertown, California.

11.     Defendant Elin is an individual domiciled in California who resides in Pioneertown, California.

12.     At this time, Plaintiffs do not know the true names and capacities of Defendants sued herein as DOES 1 through 5 and thus sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to allege Defendants DOES 1 through 5's true names and capacities when ascertained.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and the action is between citizens of different states.

14.     This Court has personal jurisdiction over Defendants Moresco and Elin because they both reside in the State of California.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants Moresco and Elin both reside in the district.

## STATEMENT OF FACTS

### *Stephen Hendel, Ruth Hendel, and KFE*

16.     Stephen Hendel is a respected businessman, investor, and patron of the arts. After graduating with a B.A. from Yale University and a J.D. from the University of Connecticut School of Law, Mr. Hendel built a career in the financial sector with extensive experience in commodities, particularly in energy and associated industries; eventually serving as chairman of the Board of Directors for Sprague Resources GP LLC. Mr. and Mrs. Hendel produced the Broadway show "FELA!," which received 11 Tony Award nominations and won 3 Tony Awards. Mr. Hendel separately won a Tony Award for the Broadway show "Parade." Mr. Hendel is co-chairman of the Board of Directors for New York Live Arts and treasurer of the Board of Trustees for

the Eugene O'Neill Theatre Center; he also serves on the Board of Directors for St. Ann's Warehouse. He is regularly sought out for his experience in the international commodities merchant business as well as the entertainment industry due to his impeccable reputation for integrity. Mr. and Mrs. Hendel also engage in extensive philanthropic endeavors.

17.    Mrs. Hendel is a theater producer and has been involved (behind the scenes) in a number of successful Broadway and Off-Broadway productions, including "A Raisin in the Sun," "Legally Blonde," "In the Heights," "Death of a Salesman," "FELA!," "Hedwig and the Angry Inch," "The Curious Incident of the Dog in the Night-Time," "A View from the Bridge," and "Mean Girls." She has received 17 Tony Award nominations and won 11 Tony Awards. She is also vice chair of the board at the Eugene O'Neill Theatre Center.

18.    Stephen Hendel is the majority owner of KFE—a fact not previously publicized outside of the Pappy Litigation. Since its inception in 1987, KFE has grown from a single New York City venue into a comprehensive leader in the music and entertainment business. KFE's operations include venue ownership and management, festivals and events, touring, artist management, recorded music production and distribution, and other initiatives.

### The Pappy Litigation

19.    Upon information and belief, Defendants Moresco and Elin are working with others to publish defamatory and false statements about Plaintiffs in order to gain an advantage in the Pappy Litigation.

20.    The Pappy Litigation alleges that Moresco and Elin lured Mr. Hendel to invest in a well-known Los Angeles and music venue in exchange for offering majority control, a preferred return, exclusive talent booking, and other rights; and then after the money was funded, Moresco and Elin proceeded to ignore the investors' rights and usurp control of the business.

21.    On June 23, 2021, S&H Desert Depot LLC (Mr. Hendel's special purpose entity for the investment) ("S&H"), individually and on behalf of nominal defendant P&H Pioneertown, L.P., as well as non-parties Morgan Margolis and John Chapman, initiated the Pappy Litigation. The Pappy Litigation was filed against Moresco, Elin, and non-parties P&H Pioneertown GP, LLC, Pioneertown Palace Holdings, LLC, and DOES 1 through 5 in California Superior Court, alleging claims for declaratory judgment, judicial order of expulsion of general partner, specific performance of partnership agreement, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, breach of contract, and conversion.

22.    Moresco and Elin subsequently ran to the press. The *Los Angeles Times* reported that "Margolis, Pirrone and Hendel represent an existential threat to Pappy & Harriet's" and "[a]dded to that is a creeping distrust of the carpetbaggers rolling in from Los Angeles and New York who are changing the culture and nature of the community"; and published a statement from Moresco and Elin's counsel that "This suit [the Pappy Litigation] is nothing but a hostile takeover attempt by New York billionaire Stephen Hendel." *See* https://www.latimes.com/entertainment-arts/music/story/2022-07-21/pappy-harriets-pioneertown-lawsuit-owners-desert. Similarly, *Billboard* published a statement from Moresco and Elin's counsel that: "The plaintiffs [in the Pappy Litigation] have not won a single part of a ruling in any hearing in this case. They are losers and so is their case." *See* https://www.billboard.com/pro/pappy-harriets-desert-venue-ownership-lawsuit.

23.    Plaintiff Stephen Hendel is the sole member of S&H, a plaintiff in the Pappy Litigation. Mr. Hendel was deposed and submitted discovery responses in the Pappy Litigation. Morgan Margolis was also deposed and served as the corporate representative of S&H in the Pappy Litigation.

24.    Trial in the Pappy Litigation is scheduled for December 18, 2023—in less than three months.

25.   The Website was registered on March 22, 2023, but the content was not published right away and was instead published sometime between April 8 and July 23, 2023. Elin's deposition in the Pappy Litigation occurred on April 24, 2023, Moresco's deposition on April 26 and 27, 2023, and Hendel's deposition on July 27, 2023.

26.   Defendants Elin and Moresco have raised a series of issues in the Pappy Litigation which are specific to that case, but are also referenced on the Website, including:

  a.  "[KFE] being lawfully terminated for breaching their talent agreement and attempting to book a music festival that would violate the venues Conditional Use Permit and cause the business to lose it and causing massive incalculable damages." This false and misleading statement from the Website is one of Moresco and Elin's central theories in the Pappy Litigation.

  b.  "Live Nation acquire[d] … Spaceland Presents." This statement from the Website has been an obscure topic of inquiry by Moresco and Elin's counsel throughout the Pappy Litigation.

  c.  KFE "prey[ed] on … Phil Pirrone who created Desert Daze (he is now a non-controlling interest in his own brand but still takes the paycheck)." This false and misleading statement from the Website concerns one of Moresco and Elin's theories in the Pappy Litigation.

  d.  "S&H Desert Depot … HAS YET to register in California (it is a Delaware LLC) … to shield the true ownership." This false and misleading statement from the Website concerns S&H's capacity to maintain litigation in California and thus relates to the Pappy Litigation because S&H is not a party to any other litigation.

The circumstances would be difficult if not impossible for a third party to cull this same information and arguments from publicly available filings in the Pappy Litigation to publish on the Website.

27.    The Website also contains statements that serve solely to paint Moresco and Elin in a positive light with respect to the underlying deal in the Pappy Litigation, including allegations that: (i) Moresco and Elin "wholly got into the [Pappy] deal without anyone (including Hendel), funded [sic] the deal up until Hendel's investment, negotiated the deal, transitioned the business from former owners in the midst of the pandemic, grew the business, and continued to expand the business"; and (ii) the Pappy deal is the "one successful business deal" Stephen Hendel has done.

28.    Accordingly, the Website content was published by someone who had a specific interest in promoting Elin and Moresco's factual and legal theories specific to the Pappy Litigation and in affecting the outcome of that litigation.

### *Coordinated Margolis Website*

29.    The Website was also published at the same time as a similar smear website about another plaintiff in the Pappy Litigation, Morgan Margolis, and with a corresponding web address format (www.morganmargolis.com).

30.    The Margolis website was registered on March 23, 2023 (the day after the Website about Stephen Hendel was registered). Elin's deposition in the Pappy Litigation occurred on April 24, 2023, Moresco's deposition on April 26 and 27, 2023, and Hendel's deposition on July 27, 2023.

31.    Like the Website about Stephen Hendel, the Margolis website contains a series of false statements that track criticisms made by Moresco and Elin in the Pappy Litigation. For example, the Margolis website contains false and defamatory statements about KFE's financial track record and venues that have closed, KFE's purported goal to move the "Desert Daze" music festival to Pappy & Harriet's, and Live Nation and its alleged involvement behind the scenes.

32.     Upon information and belief, Defendants Moresco and Elin published the defamatory and false statements about Mr. Hendel, his wife (Mrs. Hendel), and his corporation (KFE) in an attempt to convince Mr. Hendel to withdraw S&H Desert from the Pappy Litigation and/or bias a jury against Mr. Hendel's testimony in the Pappy Litigation.

33.     The foregoing circumstances of the Pappy Litigation, the coordinated websites attacking both Mr. Hendel and Margolis in similar fashion, Defendants' unique motive with respect to Mr. Hendel and Margolis and the Website content, Defendants' history of personally attacking Mr. Hendel in the press as a "billionaire" and "loser" to impact litigation, among other facts and circumstances, form the basis of the information and belief that Moresco and Elin published the Website or caused the Website to be published.

### The False and Malicious Written Statements

34.     Plaintiffs only recently learned about the Website located on the Internet at www.stephenhendel.net.

35.     Appearing with the sensational title, "Stephen Hendel, a Fela Full of Failure," the Website includes objectively false and defamatory statements of fact about Stephen Hendel, Ruth Hendel, and KFE.

36.     On the Website, Defendants make and/or cause to be made the following false and misleading statements:

     a.     Ruth Hendel is "*making money off of abused, molested, raped and groomed young girls and women*." This statement is false and misleading because Mrs. Hendel is not involved in, and has never made money from, such crimes or egregious acts.

     b.     KFE "*launders*" money for Stephen Hendel. This statement is false and misleading because KFE has never engaged in any money laundering for Stephen Hendel, which is a crime.

c.  Stephen and Ruth Hendel "*money launder[] through KFE.*" This statement is false and misleading because Mr. and Mrs. Hendel have never engaged in any money laundering, which is a crime.

d.  KFE "*mak[es] more blood money off the rape, molestation and abuse of children and women.*" This statement is false and misleading because KFE is not involved in, and has never made money from, "*rape, molestation and abuse of children and women,*" each of which are crimes.

e.  "*Stephen Hendel washes his blood money with Fela.*" This statement is false and misleading because Stephen Hendel has never engaged in money laundering or "washing" of money through "FELA!" or otherwise, which is a crime.

f.  "*Why are black celebrities like Fela's fellow public Oscars slapper, Will Smith, his wife Jada Pinkett Smith, Beyonce and Jay Z investing with the Hendels to produce 'Fela' on broadway?*" and responding that these individuals "*were paid by the Hendel's to drive the press machine. Stephen calculated that two rich white people living in Westchester wasn't a good PR look to make the production a financial success. This became a marketing cost. These celebrities were paid influencers.*" These statements are false and misleading because: (i) Mr. and Mrs. Hendel did not pay Will Smith, Jada Pinkett Smith, Beyoncé, Jay-Z, or any other celebrities to promote "FELA!" nor were these celebrities paid at all for any promotion or influencer activity associated with this production; (ii) Mr. and Mrs. Hendel did not slap anyone at the Oscars (and thus they are not "fellow public Oscar slappers"); and (iii) the investments from these celebrities were not solicited based on their race.

9

**COMPLAINT**

g.   "*KFE is complicit in abuse, molestation and multiple human rights violations.*" This statement is false and misleading because KFE has not been involved in any way with such illegal activity or wrongdoing as "*abuse, molestation, and multiple human rights violations.*"

h.   "[Stephen] Hendel deal[s] in African blood money." This statement is false and misleading because Stephen Hendel does not "deal in African blood money."

i.   "*Why do Knitting Factory and [Stephen] Hendel, who is majority owner, purport on their website to own and run so many venues and festivals that they either book, or have small stake, or merely own real estate? This is smoke and mirrors to woo other genuine creators with false promises.*" This statement is false and misleading because Stephen Hendel does not own or maintain any website personally and objectively makes claims about venue or festival ownership.

j.   "*KFE ... is a sham company*" and "*financed by [Stephen] Hendel as a hobby to look like something more than a successful Wall Street commodities trader in a dirty industry, exploiting Africa.*" These statements are false and misleading because KFE is objectively an actual corporate entity with a decades-long record of legitimate business transactions. No party has alleged that KFE engaged in a "sham" transaction, nor has any transaction objectively ever occurred. Moreover, Mr. Hendel is not publicly associated with any KFE music or restaurant deals, so no KFE transactions were objectively done to "look like" anything.

k.   Ruth Hendel is a "*wannabe theater producer*" who is "*shielded from the #MeToo movement.*" These statements are false and

misleading because Mrs. Hendel is objectively an *actual* theater producer. Moreover, Mrs. Hendel has never been accused of, tied to, or in any way directly or indirectly involved in any allegations of sexual harassment that would require shielding.

l. "*Why does Ruth Hendel call her husband manic and crazy in the NY times (and he agrees)? Because he is fucking crazy and unstable.*" This statement is false and misleading because a read of the referenced *New York Times* article indicates that Mrs. Hendel did not call Mr. Hendel "manic and crazy." *See* https://www.nytimes.com/2010/06/10/theater/10hendel.html. Indeed, Mr. Hendel is objectively not "*crazy and unstable.*"

m. Live Nation did not "*acquire Knitting Factory Entertainment along with Spaceland Presents*" because "*KFE is a toxic brand.*" This statement is false and misleading because KFE has never been for sale.

37. Upon information and belief, Defendants were aware that the above statements were false and misleading when they made them. At the very least, these statements were made in reckless or conscious disregard of the truth.

38. The Website and its false and misleading statements were published by Defendants to the public at large and are reasonably understood by those who read them to be statements of facts about Plaintiffs Stephen Hendel, Ruth Hendel, and KFE.

39. The Website was also subjected to advanced SEO efforts with hundreds of links to the Website to drive up the search engine hits for the Website—a costly and highly technical process evidencing intent to widely disseminate this misinformation to maximize impact.

40. Indeed, the Website is a top result for a Google search for "STEPHEN HENDEL" and the Website and its false and defamatory statements appear in the "Overview" and "About" sections in the results page:



41. Upon learning of the Website, undersigned counsel sent a takedown request on for the Website to Namecheap (the web hosting company for the Website).

42. Having received no response to their initial takedown request, undersigned counsel sent a renewed takedown request for the Website to Namecheap.

43. As of the filing of this Complaint, there has been no response to the takedown requests and the Website remains on the Internet and accessible to the public at large.

44. As such, Plaintiffs Stephen and Ruth Hendel bring claims against Defendants for defamation *per se* and false light; Plaintiff KFE brings claims against

Defendants for defamation *per se*; and all Plaintiffs seek injunctive relief and monetary damages.

## COUNT I

## DEFAMATION PER SE IN VIOLATION OF CAL. CIV. CODE §§ 44, 45
### (Plaintiff Stephen Hendel against all Defendants)

45.    Plaintiff Stephen Hendel repeats and realleges each and every of the foregoing and following allegations above as if fully stated herein.

46.    Defendants have intentionally made knowingly false and defamatory statements of fact about Mr. Hendel to third parties that are reasonably understood by those who read them to be statements of facts regarding Mr. Hendel's professional conduct.

47.    Specifically, Defendants' statements about Mr. Hendel include, among others and without limitation, the above-described false assertions that:

      a.    Stephen Hendel "money launder[s] through KFE."

      b.    "Stephen Hendel washes his blood money with Fela."

      c.    "[Stephen] Hendel deal[s] in African blood money."

      d.    KFE is "financed by [Stephen] Hendel as a hobby to look like something more than a successful Wall Street commodities trader in a dirty industry, exploiting Africa."

      e.    "[B]lack celebrities like Fela's fellow public Oscars slapper, Will Smith, his wife Jada Pinkett Smith, Beyonce and Jay Z … were paid by the Hendel's to drive the press machine. Stephen calculated that two rich white people living in Westchester wasn't a good PR look to make the production a financial success. This became a marketing cost. These celebrities were paid influencers."

      f.    "[Stephen Hendel] is fucking crazy and unstable."

      g.    "[Stephen Hendel] … purport[s] on [his] website to own and run so many venues and festivals."

13
**COMPLAINT**

(collectively, the "Stephen Hendel Statements").

48.   The Stephen Hendel Statements are all false, misleading, and defamatory in that they falsely state that Mr. Hendel is engaged in crimes of moral turpitude and matters incompatible with the proper conduct of his business, trade, and profession; falsely state that Mr. Hendel (both personally and in the course of his business) has committed serious criminal offenses, including money laundering and assault, and profits from the criminal behaviors of others; and falsely state that Mr. Hendel is mentally unstable.

49.   Defendants communicated these lies (the Stephen Hendel Statements) to the public at large even though, on information and belief, Defendants knew them to be untrue when they made the statements. In publishing the Stephen Hendel Statements, Defendants acted maliciously, oppressively, with an improper and evil motive (as evidenced in part by the animus displayed in the Pappy Litigation and prior comments to the press), and if not with knowledge that the Stephen Hendel Statements were false, then in reckless or conscious disregard of the truth.

50.   Mr. Hendel in no way approved the false and defamatory statements published by Defendants.

51.   Defendants disseminated and published these false and defamatory statements on, at a minimum, the Website in a manner that achieved widespread exposure to a global Internet audience, specifically through the use of professional SEO techniques.

52.   The Stephen Hendel Statements are malicious and false statements of fact that expose Mr. Hendel to hatred, contempt, or aversion, or induce an evil or unsavory opinion of Mr. Hendel, in the minds of a substantial number of the community, international commodities merchant business, and the entertainment industry.

53.   The Stephen Hendel Statements were made with the intent to harm and out of hostility towards Mr. Hendel, particularly in light of the pending Pappy Litigation against Defendants Moresco and Elin.

14

**COMPLAINT**

54.  The Stephen Hendel Statements are defamatory *per se* in that they tend to impugn Mr. Hendel's reputation in his business, trade, and profession in the commodities business and in the entertainment industry.

55.  The Stephen Hendel Statements are also defamatory *per se* because Defendants have charged Mr. Hendel with serious criminal offenses.

56.  The Stephen Hendel Statements are also defamatory *per se* because Defendants have imputed that Mr. Hendel has a serious disease (mental illness).

57.  Mr. Hendel has suffered and will continue to suffer non-economic damages, such as personal humiliation, emotional distress, and harm to his reputation and standing in the community, international commodities merchant business, and entertainment industry.

58.  Defendants made the Stephen Hendel Statements about Mr. Hendel with the specific intent to cause harm to Mr. Hendel, and did so willfully and with malice (as evidenced in part by the animus displayed in the Pappy Litigation and prior comments to the press), and thus Mr. Hendel is entitled to, in addition to other damages and amounts, an award of punitive and exemplary damages.

59.  As a direct and proximate cause of the false and defamatory statements, Mr. Hendel has suffered, and will continue to suffer, substantial damages, and accordingly Mr. Hendel is entitled to damages in an amount to be determined at trial.

## COUNT II

## DEFAMATION PER SE IN VIOLATION OF CAL. CIV. CODE §§ 44, 45
### (Plaintiff Ruth Hendel against all Defendants)

60.  Plaintiff Ruth Hendel repeats and realleges each and every of the foregoing and following allegations above as if fully stated herein.

61.  Defendants have intentionally made knowingly false and defamatory statements of fact about Mrs. Hendel to third parties that are reasonably understood by those who read them to be statements of facts regarding Mrs. Hendel's professional conduct, including her conduct as a theater producer.

62.   Specifically, Defendants' statements about Mrs. Hendel include, among others and without limitation, the above-described false assertions that:

    a.   Ruth Hendel is "making money off of abused, molested, raped and groomed young girls and women."

    b.   Ruth Hendel is a "wannabe theater producer" who is "shielded from the #MeToo movement."

    c.   "[B]lack celebrities like Fela's fellow public Oscars slapper, Will Smith, his wife Jada Pinkett Smith, Beyonce and Jay Z … were paid by the Hendel's to drive the press machine. Stephen calculated that two rich white people living in Westchester wasn't a good PR look to make the production a financial success. This became a marketing cost. These celebrities were paid influencers."

    d.   Ruth Hendel "money launder[s] through KFE."

(collectively, the "Ruth Hendel Statements").

63.   The Ruth Hendel Statements are all false, misleading, and defamatory in that they falsely state that Mrs. Hendel is engaged in crimes of moral turpitude and matters incompatible with the proper conduct of her business, trade, and profession; and falsely state that Mrs. Hendel has committed serious criminal offenses, including money laundering and assault, and profits from the criminal behaviors or wrongdoings of others.

64.   Defendants communicated these lies (the Ruth Hendel Statements) to the public at large even though, on information and belief, they knew them to be untrue when they made the statements. In publishing the Ruth Hendel Statements, Defendants acted maliciously, oppressively, with an improper and evil motive (as evidenced in part by the animus displayed in the Pappy Litigation and prior comments to the press), and if not with knowledge that the Ruth Hendel Statements were false, then in reckless or conscious disregard of the truth.

65.   Mrs. Hendel in no way approved the false and defamatory statements published by Defendants.

66.   Defendants disseminated and published these false and defamatory statements on, at a minimum, the Website in a manner that achieved widespread exposure to a global Internet audience, specifically through the use of professional SEO techniques.

67.   The Ruth Hendel Statements are malicious and false statements of fact that expose Mrs. Hendel to hatred, contempt, or aversion, or induce an evil or unsavory opinion of Mrs. Hendel, in the minds of a substantial number of the community and the entertainment industry.

68.   The Ruth Hendel Statements were made with the intent to harm and out of hostility towards Mrs. Hendel, particularly in light of the pending Pappy Litigation against Defendants Moresco and Elin.

69.   The Ruth Hendel Statements are defamatory *per se* in that they tend to impugn Mrs. Hendel's reputation in her business, trade, and profession as a theatre producer.

70.   The Ruth Hendel Statements are also defamatory *per se* because Defendants have charged Mrs. Hendel with serious criminal offenses.

71.   Mrs. Hendel has suffered and will continue to suffer non-economic damages, such as personal humiliation, emotional distress, and harm to her reputation and standing in the community and entertainment industry.

72.   Defendants made the Ruth Hendel Statements about Mrs. Hendel with the specific intent to cause harm to Mrs. Hendel, and did so willfully and with malice (as evidenced in part by the animus displayed in the Pappy Litigation and prior comments to the press), and thus Mrs. Hendel is entitled to, in addition to other damages and amounts, an award of punitive and exemplary damages.

73.   As a direct and proximate cause of the false and defamatory statements, Mrs. Hendel has suffered, and will continue to suffer, substantial damages, and accordingly Mrs. Hendel is entitled to damages in an amount to be determined at trial.

<u>COUNT III</u>

**DEFAMATION PER SE IN VIOLATION OF CAL. CIV. CODE §§ 44, 45**

**(Plaintiff KFE against all Defendants)**

74.   Plaintiff KFE repeats and realleges each and every of the foregoing and following allegations above as if fully stated herein.

75.   Defendants have intentionally made knowingly false and defamatory statements of fact about KFE to third parties that are reasonably understood by those who read them to be statements of facts regarding KFE's professional conduct.

76.   Defendants' statements about KFE include, among others and without limitation, the above-described false assertions that:

    a.    "KFE is complicit in abuse, molestation, and multiple humans rights violations."

    b.    KFE "launders" money for Stephen Hendel.

    c.    KFE "mak[es] more blood money off the rape, molestation and abuse of children and women."

    d.    Live Nation did not "acquire Knitting Factory Entertainment along with Spaceland Presents" because "KFE is a toxic brand."

    e.    "KFE … is a sham company."

(collectively, the "<u>KFE Statements</u>").

77.   The KFE Statements are all false, misleading, and defamatory in that they falsely state that KFE is engaged in crimes of moral turpitude and matters incompatible with the proper conduct of its business, trade, and profession; and falsely state that KFE has committed serious criminal offenses, including money laundering, sexual abuse, and human rights violations, and profits from the criminal behaviors of others.

78.   Defendants communicated these lies (the KFE Statements) to the public at large even though, on information and belief, they knew them to be untrue when they made the statements. In publishing the KFE Statements, Defendants acted maliciously, oppressively, with an improper and evil motive (as evidenced in part by the animus displayed in the Pappy Litigation and the related Morgan Margolis website), and if not with knowledge that the KFE Statements were false, then in reckless or conscious disregard of the truth.

79.   KFE in no way approved the false and defamatory statements published by Defendants.

80.   Defendants disseminated and published these false and defamatory statements on, at a minimum, the Website in a manner that achieved widespread exposure to a global Internet audience, specifically through the use of professional SEO techniques.

81.   The KFE Statements are malicious and false statements of fact that expose KFE to hatred, contempt, or aversion, or induce an evil or unsavory opinion of KFE, in the minds of a substantial number of the community and the entertainment industry.

82.   The KFE Statements were made with the intent to harm and out of hostility towards KFE, particularly in light of the pending Pappy Litigation against Defendants Moresco and Elin.

83.   The KFE Statements are defamatory *per se* in that they tend to impugn KFE's reputation in its business, trade, and profession.

84.   Moreover, the KFE Statements are also defamatory *per se* because Defendants have charged KFE with serious criminal offenses.

85.   KFE has suffered and will continue to suffer non-economic damages, such as harm to its reputation and standing in the community and entertainment industry.

86.   Defendants made the KFE Statements about KFE with the specific intent to cause harm to KFE, and did so willfully and with malice (as evidenced in part by the animus displayed in the Pappy Litigation and the related Morgan Margolis website), and thus KFE is entitled to, in addition to other damages and amounts, an award of punitive and exemplary damages.

87.   As a direct and proximate cause of the false and defamatory statements, KFE has suffered, and will continue to suffer, substantial damages, and accordingly KFE is entitled to damages in an amount to be determined at trial.

## COUNT IV

## FALSE LIGHT

### (Plaintiff Stephen Hendel against all Defendants)

88.   Plaintiff Stephen Hendel repeats and realleges each and every of the foregoing and following allegations above as if fully stated herein.

89.   Defendants made false and misleading statements of fact about Mr. Hendel, including the Stephen Hendel Statements (defined above), to the public that placed him in a false light.

90.   Defendants communicated these lies (the Stephen Hendel Statements) to the public at large even though, upon information and belief, they knew them to be untrue when they made the statements. In publishing the Stephen Hendel Statements, Defendants acted maliciously, oppressively, with an improper and evil motive (as evidenced in part by the animus displayed in the Pappy Litigation and prior comments to the press), and if not with knowledge that the Stephen Hendel Statements were false, then in reckless or conscious disregard of the truth.

91.   Mr. Hendel in no way approved the false statements published by Defendants.

92.   Defendants publicly disclosed the Stephen Hendel Statements on, at a minimum, the Website in a manner that achieved widespread exposure to a global Internet audience, specifically through the use of professional SEO techniques.

93.   The false light created by the disclosure of the Stephen Hendel Statements—for example, that Mr. Hendel is "fucking crazy and unstable," "deal[s] in African bloody money" and "money launder[s]"—would be highly offensive to a reasonable person in Mr. Hendel's position.

94.   Mr. Hendel has suffered and will continue to suffer non-economic damages, such as personal humiliation, emotional distress, and harm to his reputation and standing in the community, international commodities merchant business, and entertainment industry.

95.   Defendants made the Stephen Hendel Statements about Mr. Hendel with the specific intent to cause harm to Mr. Hendel, particularly in light of the pending Pappy Litigation against Defendants Moresco and Elin, and did so willfully and with malice, and thus Mr. Hendel is entitled to, in addition to other damages and amounts, an award of punitive and exemplary damages.

96.   As a direct and proximate cause of the Stephen Hendel Statements, Mr. Hendel has suffered, and will continue to suffer, substantial damages, and accordingly Mr. Hendel is entitled to damages in an amount to be determined at trial.

## COUNT V

## FALSE LIGHT

### (Plaintiff Ruth Hendel against all Defendants)

97.   Plaintiff Ruth Hendel repeats and realleges each and every of the foregoing and following allegations above as if fully stated herein.

98.   Defendants made false and misleading statements of fact about Mrs. Hendel, including the Ruth Hendel Statements (defined above), to the public that placed her in a false light.

99.   Defendants communicated these lies (the Ruth Hendel Statements) to the public at large even though, upon information and belief, they knew them to be untrue when they made the statements. In publishing the Ruth Hendel Statements, Defendants acted maliciously, oppressively, with an improper and evil motive (as

21

**COMPLAINT**

evidenced in part by the animus displayed in the Pappy Litigation and prior comments to the press), and if not with knowledge that the Ruth Hendel Statements were false, then in reckless or conscious disregard of the truth.

100. Mrs. Hendel in no way approved the false statements published by Defendants.

101. Defendants publicly disclosed the Ruth Hendel Statements on, at a minimum, the Website in a manner that achieved widespread exposure to a global Internet audience, specifically through the use of professional SEO techniques.

102. The false light created by the disclosure of the Ruth Hendel Statements— for example, that Mrs. Hendel is "making money off of abused, molested, raped and groomed young girls and women" and "money launder[s]"—would be highly offensive to a reasonable person in Mrs. Hendel's position.

103. Mrs. Hendel has suffered and will continue to suffer non-economic damages, such as personal humiliation, emotional distress, and harm to her reputation and standing in the community and entertainment industry.

104. Defendants made the Ruth Hendel Statements about Mrs. Hendel with the specific intent to cause harm to Mrs. Hendel, particularly in light of the pending Pappy Litigation against Defendants Moresco and Elin, and did so willfully and with malice, and thus Mrs. Hendel is entitled to, in addition to other damages and amounts, an award of punitive and exemplary damages.

105. As a direct and proximate cause of the Ruth Hendel Statements, Mrs. Hendel has suffered, and will continue to suffer, substantial damages, and accordingly Mrs. Hendel is entitled to damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs Stephen Hendel, Ruth Hendel, and KFE respectfully request that the Court enter an order and judgment in favor of them and against Defendants Moresco, Elin, and DOES 1 through 5 as follows:

a.     Preliminarily and permanently enjoining Defendants, and all persons or entities acting in concert or participation with any or all of them, to takedown and remove the Website from the Internet;

b.     Preliminarily and permanently enjoining Defendants, and all persons or entities acting in concert or participation with any or all of them, from engaging in any further acts of defamation against Plaintiffs;

c.     Awarding Plaintiffs damages in an amount to be proven at trial;

d.     Awarding Plaintiffs punitive and exemplary damages, in an amount to be proven at trial;

e.     Awarding Plaintiffs pre and post-judgment interest in an amount according to law;

f.     Awarding Plaintiffs their costs incurred herein; and

g.     Granting Plaintiffs such other and further relief at law or in equity as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a jury trial on all the issues so triable.

**COMPLAINT**

DATED:  September 28, 2023        BLANK ROME LLP


                                 By:/s/ *Jonathan A. Loeb*
                                    Jonathan A. Loeb
                                    Erica R. Graves
                                    Nicole N. Wentworth

                                    Craig M. Flanders
                                    (*pro hac vice to be filed*)

                                 Attorneys for Plaintiffs
                                 STEPHEN HENDEL, RUTH HENDEL, AND
                                 KNITTING FACTORY ENTERTAINMENT,
                                 INC.

**COMPLAINT**